## EMIL WERNER v. ROSALIA VOGELI.
### No. 633.    (63 Pac. 607.)

LIBEL—*List of Debtors—Publication.* Where defendant was a member of an organization known as the "Merchants' Protective Association," which published and distributed lists to members of names of persons unworthy of credit, and among them that of plaintiff, who was not indebted at the time to said defendant, as alleged on the list, the defendant will be held liable in damages.

Error from Sedgwick district court; D. M. DALE, judge. Opinion filed January 8, 1901. Affirmed.

*Dyer & Davis*, for plaintiff in error.

*O. G. Eckstein*, and *Adams & Adams*, for defendant in error.

The opinion of the court was delivered by

SCHOONOVER, J. : It is conceded by counsel for defendant in error that the statement of facts in the brief of counsel for plaintiff in error is substantially correct. We quote from plaintiff in error's brief:

"The defendant in error, plaintiff below, filed her petition in the district court of Sedgwick county, alleging that she was a married woman and the wife of

one J. L. Vogeli, both living in the city of Wichita, state of Kansas, during the months of April and May, 1893; that Emil Werner, plaintiff in error, caused the name of Mrs. J. L. Vogeli, the defendant in error, to be placed on what is termed the 'bad-pay list,' or the list of the Merchants' Protective Association, as a person unworthy of credit.   The said association is a voluntary association formed for mutual protection and not for gain or profit, nor is it in any sense a collection agency.   The pledge of the persons joining said association is as follows :

" 'We, the undersigned, hereby pledge ourselves to report to our secretary, monthly, the name of every person trading with us who has proven himself or herself unworthy of credit; and we do further covenant between ourselves not to give any credit whatever to a person whose name shall thus be reported and retained *on the bad-pay list for want of satisfactory settlement.*'

"Some time in the spring of 1893, Mrs. Vogeli, in company with her mother, Mrs. Sandleback, went to the hardware store of Emil Werner, plaintiff in error, and a stove was purchased of Werner by either Mrs. Vogeli or her mother, Werner thinking he was trading with Mrs. Vogeli, but Mrs. Vogeli claiming that she had nothing to do with buying the stove, but that her mother purchased it.   The stove was delivered to the house where Mrs. Sandleback and Mr. and Mrs. Vogeli lived, but was never paid for.

"Some days after the delivery of the stove, word was sent to Mr. Werner that the stove was not satisfactory, and Mr. Werner went to the house and examined the stove and refused to take it back, claiming that it was all right.   The people at the house, after one or two weeks, set the stove outside the house and refused to pay for it.   The stove had been charged to Mrs. Vogeli, and Mr. Werner had never seen either lady until the day they went to see the stove.   Mr. Werner made out a bill of twenty-three dollars for the stove and first placed it in the hands of one O. G. Eckstein, an attorney at law, for collection, who re-

ported to Mr. Werner that the debt could not be collected.   He said : 'They have got nothing, and you will have the costs to pay.'

"Werner then put the claim in the hands of one W. S. Morris, an attorney at law, for collection.   Mr. Morris was also at this time secretary of the Merchants' Protective Association.

"Mr. Morris could not collect the bill and returned it to Mr. Werner without bringing suit on the account. Some time afterward Mr. Werner reported the bill, together with the name of Mrs. J. L. Vogeli, to Mr. Morris, as secretary of the Merchants' Protective Association, in accordance with the pledge of each member of the association.   Mr. Werner was a member of this association.   At the next meeting of the board of directors of said association, Mr. Morris, in accordance with the custom of said association, and carrying out his duties as secretary, reported the name of Mrs. J. L. Vogeli to the board, with the bill of $23 for hardware, and the board ordered the name of Mrs. J. L. Vogeli to be placed on the bad-pay list."

A trial was had before a jury, and a verdict returned and judgment rendered against the plaintiff in error, defendant below, for $400 and costs.   A motion for a new trial was overruled, and the defendant below brings the case here for review.

The object of the Merchants' Protective Association, as declared by its constitution, is as follows :

"We, the undersigned, hereby pledge ourselves to report to our secretary, monthly, the name of every person trading with us who has proven himself or herself unworthy of credit ; and we further covenant between ourselves not to give any credit whatever to a person whose name shall thus be reported and retained on the bad-pay list for want of satisfactory settlement."

It is also provided by the by-laws of the association :

"Sec. 4.   .   .   .   Each member shall hand his

pass-book to the secretary, together with a list of any names he may have of bad-pay customers, the 10th of each month.     .

"Sec. 5.  No member shall give credit to any person who may be reported by one or more members of the association until such a one shall have satisfied all."

"Sec. 7.  The secretary will furnish members of the association with a full and complete list of all names reported, and each member stands pledged to refuse all so reported any credit whatever."

The president of the association testified as follows :

"Ques.  What action must a party take whose name appears before it is taken off?   Ans.  They must pay the account on which the name was placed on there. No name is placed on except by order of the party" —member of the association.

"Q.  State what the object of placing the name of persons on lists, whether for collection or otherwise. A.  For collection partly.

"Q.  State what other object there is other than for collecting accounts.   A.  To aid the members in regulating their credit."

A letter written by Mr. Morris, secretary of the association, was introduced in evidence.   The letter is as follows :

"The board of directors of the Merchants' Protective Association has ordered me to buy new books.   All the names now reported will be printed in these new books, except those who have moved away, those who have paid up, and those who pay up in the next fifteen days.

"Your name is on the old books, and I would like to see you and help to arrange with the party who reported you to have your name omitted from the new books.   I want as few as possible of the old names to come out on the new books, and none except those well known to be VERY POOR PAY.

"I am not sending this circular to any one except those I think will appreciate it and make an effort to

keep their names clear. The old books are to be burned. Now is a good chance to fix up the old matter. Please call soon."

It is clear from the record that the defendant below directed the officers of this association to place the name of Mrs. J. L. Vogeli on the "bad-pay list" which was published and distributed to the members of the association.

We also conclude that one of the objects of the association was the collection of bad debts due its members. In this case, the machinery of the association was used in the attempt to collect a debt alleged to be due from Mrs. Vogeli to Emil Werner for the purchase-price of a stove. The jury found, in answer to a special question, that Mrs. Vogeli did not purchase the stove in controversy from Emil Werner. The trial court instructed the jury as follows :

"The plaintiff, for her cause of action against the defendant, says : That she is a resident of the city of Wichita, Sedgwick county, Kansas, and that she has always been a woman of honor and integrity and paid all her debts and obligations; that the defendant, Emil Werner, did, on or about the 15th day of April, 1895, in the city of Wichita, Sedgwick county, Kansas, falsely and maliciously publish the hereinafter libelous words of and against the said plaintiff; that the said defendant, intending to injure the said plaintiff in her character, reputation and feelings and causing it to be believed by merchants and citizens of the said city of Wichita, did, on or about the 15th day of April, 1895, have published or cause to be published, in a certain book or pamphlet issued by the Merchants' Protective Association of the said city of Wichita, the name of the said plaintiff, under the name of Mrs. J. L. Vogeli, meaning said plaintiff; and that said organization or association was contributed to by members belonging thereto by buying said books or pamphlets of said organization that

were printed from time to time, which said books contained a large list of names consisting of citizens of the city of Wichita and Sedgwick county, Kansas, whose names have been placed in said book or pamphlet and caused to be placed in said book and pamphlet by the person or persons who purchased said books from said association; that the circulation and publication of these books or pamphlets containing said list of names aforesaid is very large, and the same has been sent to several thousand subscribers throughout the city of Wichita, Sedgwick county, and that the said Emil Werner was at said time, and has been for several years past, a member of said association, and contributing to the same by buying or purchasing said book from said association, and that said defendant had been a member thereof at said time; that said book purporting to contain the names of persons who are dishonest, unworthy of credit, dead-beats, unworthy of the confidence of their fellow men, and persons who fail to pay their debts or obligations, and that this was also the accepted meaning and interpretation as understood by the public at said time, by reason of individual names being found in said list or published in said book or pamphlet; and that the said defendant herein, knowing all these facts, and understanding the meaning and interpretation as understood by the public or people who read said book or pamphlet as what they understood by the individual's name being placed or published in said lists as aforesaid, did knowingly, wilfully, maliciously, thereby meaning this plaintiff and intending to injure her in her good name, reputation, and credit, and expose her to ridicule, published and caused to be published and promulgated to the public generally, at the time aforesaid, of and concerning this plaintiff, this plaintiff's name among or in said list of names aforesaid, as follows, to wit, Mrs. J. L. Vogeli, meaning this plaintiff, and did so set forth and publish in said book as aforesaid, and at the time of the commencement of this action continued to have said name of the plaintiff published in said book or pamphlet as

containing said plaintiff's name as aforesaid, was issued, published and sent forth by the defendant to a large number of individuals throughout the city of Wichita and Sedgwick county at the time aforesaid; and said plaintiff further claims that, at the time said Emil Werner did publish or cause to be published this plaintiff's name among the list of names as aforesaid in said book or pamphlet, this plaintiff was not indebted to the said defendant in any sum whatever, and that said defendant had no authority or right to publish or cause to be published this plaintiff's name in said book or pamphlet as aforesaid among said list of names aforesaid, but that the same was done by said defendant as aforesaid, and for the further purpose of injuring her in her good name, standing, and reputation, and for the purpose of bulldozing and intimidating the said plaintiff into paying said defendant money when said plaintiff was not indebted to said defendant in any sum, as said defendant well knew.

"Plaintiff further claims that by reason of the facts aforesaid she has been greatly damaged and injured in her credit, character, good name, and reputation, and also by the ridicule, humiliation, mental anguish, and distress of mind; that she has been damaged in the sum of $10,000, and demands judgment for that amount.

"The defendant has filed a general denial of all these charges.

"You are instructed that it is incumbent upon the plaintiff to prove by a preponderance of the testimony, all the material allegations in the plaintiff's petition, and this includes proof by a preponderance of the evidence that the defendant caused the publication of the acts alleged in plaintiff's petition to be made, and that the same was maliciously done, and that the plaintiff was damaged thereby.

"1. You are instructed that a libel is a malicious defamation of a person, made public by any printing, writing, sign, picture, representation or effigy tending to provoke a person to wrath or to expose her to pub-

lic hatred or contempt, or to deprive her of the benefits of public confidence and social intercourse.

"2. The jury are instructed that every person who makes or composes, dictates or procures the same to be done, who wilfully publishes or circulates such libel, or in any way knowingly and wilfully asssists in making or publishing a pamphlet, the same would be a libel to the person injured thereby.

"3. The jury are instructed that no printing, writing or other thing is a libel unless there has been a publication thereof. But further, the delivery, selling, reading or otherwise communicating the libel, or causing the same to be delivered, sold, read, or otherwise communicated, to one or more persons or to the party libeled, is a publication thereof.

"4. The jury are instructed that if you find from the evidence in this case that the defendant, Emil Werner, at the times charged in the plaintiff's petition in this case, was a member of the organization known as the Merchants' Protective Association, and that said association at said time published and caused to be distributed to the members of its association books or pamphlets purporting to contain a list of names of delinquent debtors or persons unworthy of credit, and you further find that, at said time, said plaintiff was not indebted to the said Emil Werner, then you are instructed such publication would be malicious and libelous, and the defendant would be liable to the plaintiff for damages.

"5. If the jury find that the defendant published or caused to be published a libel of and concerning the plaintiff, as charged in the plaintiff's petition, he is held to have acted maliciously in law against her, whatever his motive in fact might have been, and the law presumes this as malicious on the part of the defendant against the plaintiff, and the said plaintiff does not have to prove it in the first instance.

"6. If the jury, under the evidence and instructions of the court, find the defendant maliciously published or caused to be published a libel, as alleged in plaintiff's petition, in assessing the plaintiff's damages

they are not confined to such damages as will simply compensate the plaintiff for her injuries as the evidence shows that she has received from the publication of the libel charged in the petition, but you may, in addition thereto, assess against the defendant, by way of punishment, and as an example to others, such damages as you, in your sound judgment, under all the evidence in the case, believe the defendant ought to pay, not to exceed in any event the amount claimed in her petition."

"8. The jury are instructed that malice in law, as used in these instructions, is not confined to personal spite of one individual against another, but it consists of the violation of the law, to the prejudice of another. In other words, malice, in its common acceptance, means ill will against a person, but in the legal acceptation it means the wrongful act, done intentionally, without just cause or excuse.

"You are exclusive judges of all the facts appearing in the case, of the weight of the evidence, and the credibility of witnesses, and in determining the weight to be given to the testimony of any such witness, you may properly consider the testimony of any such witness in the result of the trial, his apparent candor or lack of it, his demeanor upon the witness-stand, and any other circumstances properly appearing in the case.

"If you should find that any witness wilfully testified falsely to any material fact, you are justified in disbelieving all that such witness may have testified to, unless such witness is corroborated by other witnesses whom you believe."

These instructions, in our opinion, state the law applicable to the facts as they appear in the record. Many decisions are cited by counsel for both parties; from our examination of the authorities, we are satisfied that the case was fairly tried, and that no error sufficient to justify a reversal of the case appears in the record.

The judgment of the district court will be affirmed.